v. Soriano. Mr. O'Neill, you're up, sir. May it please the court. The district court clearly erred in two primary ways. First, by finding that there were no coercive procedures employed when Trooper Rodriguez asked Soriano for consent to search, and second, by finding that the government met its burden to show that the consent was voluntary, despite the fact that the consent was given with Soriano knowing that incriminating evidence would be not voluntary. The case differs from Perales in two primary ways. First, this court stressed in Perales that the conversation between the officer and the defendant was cordial and did not involve any verbal intimidation. That was not the case here. Trooper Rodriguez's questioning of Soriano directly before asking for consent was an accusatory ramp-up of an array of different questions and accusations. Second, in Perales, the district court had found that the incriminating evidence was particularly well hidden. Specifically, it was inside of an engine block that it took multiple officers to disassemble, and therefore, the defendant there likely consented, thinking that the evidence would not be found. Here, the incriminating evidence was in a duffel bag on the back seat of a sedan, about which Trooper Rodriguez had already her suspicions, starting with the coercive police procedures. Before the accusatory questioning, Trooper Rodriguez had taken Soriano's documents, promised a citation that she had not issued prior to asking for consent, and not advised Soriano of his right to refuse consent. This court found in Perales that those three factors were not by themselves sufficient to find a course of that they're highly relevant and indicative of coercion. Those three factors, combined with the accusatory questioning, made the procedures used by Trooper Rodriguez prior to asking for consent coercive. This court has never addressed the sort of accusatory questioning that she employed, but in Chavez v. Arreal, this court did find that an officer had made his suspicions known, then asked for consent, which made a refusal at that point seem pointless. Further, the Fourth Circuit in Robertson has found accusatory questioning coercive, and of course, the Supreme Court in Schneckloff specifically said, a count must be taken of subtly coercive police questions. Here, the district court did not take those questions into account, and therefore clearly erred. The questions that I'm specifically referring to are the questions that happened between Rodriguez and Soriano in their second encounter. During the first encounter, she had asked him about his itinerary, his criminal history, the contents of the car, and his job. In the second conversation, she first clarified when he had purchased the car and an issue in his criminal history. She then accused him of lying to her about his mother and lying to her about his criminal history, explaining why she had thought she had lied, which led to a short discussion. After that, she summarized, saying, I don't understand your nervousness since you were in the front, that you didn't understand the question about your mom and all that. I'm going to ask you a clear question. Is there anything in the vehicle that you shouldn't have? He answers, no. She asked, drugs? No. Any cocaine, marijuana, ecstasy, high amounts of money? No. And directly after that ramp-up, she asked, do you give me permission to check the car? That's from the transcript of her body camera record at 396 to 398. She agreed with the characterization that this was an accuser, a ramp-up prior to asking for consent in the motion to suppress hearing, the transcript of which shows in record 306 to 07. The government argues that this style of questioning was permitted, and that's absolutely correct. It was permitted. Trooper Rodriguez could have used it to develop probable cause, which she then could have used to justify a consent to search, but she didn't do that. She also could have ameliorated the coercive effects of the questioning by either returning Soriano's documents and issuing the prior, the promised citation, which would conclude the, the involuntary detention, or advising him of his right to refuse consent, either through a form or by simply telling him, you can refuse consent, but asking, may I search the car? She did not do any of those things. Therefore, the district court clearly erred by finding that no coercive procedures affected this interaction, but that was not, that the accusatory questioning by itself is not the only course of procedure that was employed. It was amplified by the fact that Soriano was double teamed by two officers throughout the stop. Trooper Ramirez was flanked by her, Trooper Ramirez flanked Trooper Rodriguez throughout her interaction with Soriano. Specifically, during the accusatory questioning, they stood side-by-side, two versus one, and made these accusations. The government says that in Guevara Miranda, this court has found that the sort of tactic is permissible, as long as the other officer doesn't play a primary role, but what happened in Guevara Miranda was that the other Here, Trooper Ramirez and Rodriguez stood side-by-side throughout the questioning against Soriano, but the accusatory questioning was further amplified by the misrepresentation that Trooper Rodriguez employed during the questioning. Specifically, she said, after telling him that during the second conversation about the purchase history, about the purchase of the car and his criminal history, she said she thought, she felt she had been, she had been clear, and she had discussed this with her partner, that he, that she had been clear, and she had asked him something to the effect of, do you think I have been unclear, and he, and she says to Soriano, he told me no. I understood everything you told him. You lied to me about your mom. She goes on to explain why she thinks he lied about his criminal history in record 396 to 97. She did not pause to give him a chance to respond. Her tone in that questioning is clear. She was done asking questions. She was making accusations. The district court erred in a couple of ways in interpreting this interaction. First, the district court found that she meant by her deceit merely to clarify to Soriano what was going on, but deceiving a person and telling that person, this person says to me they understand it, does not help the third person, Mr. Soriano, understand at all. More importantly, it's contradicted by her testimony on the record. When asked what she meant by this, when asked about this interaction, this deceit of Soriano, she said she meant to communicate that her partner was, quote, seeing the same things I was seeing. That's on record 302 to 303. The deceit. Let me ask you about what the district court said about that. And you obviously had been summarizing it. Uh, Trooper Rodriguez expressed her belief she was clear. Ramirez believed she was being clear. Confronted defendant about the discrepancies. Asked about whether the defendant understood what was being asked. And the defendant said he was confused, um, regarding the arrest history, etcetera. So it seems to me at that point, the district court would be correct in saying at least the fact finding permitted. Uh, defending his responses and saying he was confused. Um, I haven't looked at the video. Maybe, of course, the nature of it is you think clear from the video itself and then from the printed words. But on the on the plain written language on the paper, it seems to me that it could be interpreted as, uh, pointing out why these things don't fit together. And the defendant responds. I wasn't fully understanding everything. I'm not seeing that has to be a finding of coercion. Your Honor, my argument is that she wasn't so much. She wasn't helping him to understand. There's a clear point in the transcript where she she shifts from discussing the arrest history, and the confusion arises directly before what I'm talking about. The confusion comes in, uh, trooper and Soriano explaining to Trooper Rodriguez. Well, I thought you meant, you know, when you get arrested on the side of the road like for a ticket, I didn't realize you meant when there's an order of arrest and you go and turn yourself in. After they conclude that conversation, Trooper Rodriguez clearly shifts and says, I have been clear. She's making accusations now, not asking questions. And she says, I told you this and you lied to me. And she doesn't give him a pause. She doesn't give him any chance to explain. So it resolve a confusion. But I think regardless, the district court did find that she employed deceit but dismissed the seat the deceit as not the kind of deceit that this court has previously disapproved of. In Cavett, this court found that consent induced by an officer's misrepresentation is ineffective. There, the misrepresentation was merely used to achieve a change in location. Specifically, the officer was raining and said, I have a warning. I'd like you to sign. You mind driving up to a covered area further up the road? The driver did that and then consented to search at the covered area. The deceit there was slow down, slow down a little bit. You were starting to slow down a bit. You were starting to. Yeah, he was. Your sound was getting a little bit garbled. Uh, why don't you start? I'm sorry, Your Honor. Zoom just informed me my connection was unstable. This is on his end. Zoom informed him that his connection was unstable. Does it look like it's back? It appears to be back. Yes, Your Honor. All right. Okay, that's better. Thank you. What I was doing was distinguishing the misrepresentation used in Cavett, which was merely used to achieve a change in location as opposed to the misrepresentation here, which was used as part of this accusatory ramp up before asking for Yeah. Because you've used the term deceit several times, and obviously it's purposeful. So where in do you, uh, you know what? What's the translation into deceit here? Your Honor, Trooper Rodriguez told Soriano that she and her partner had had a conversation in which they concluded that he was being, uh, that she was being clear that he was lying and being nervous. My argument is that that increased the coercion of her accusatory questioning because she was saying it's shared by this other partner, this other person who's standing next to me as well, uh, increasing the pressure on you to consent. And this happened directly before asking for consent. It's clear in the record that this accusatory questioning happened. I think the cases clearly show that it was coercive. But if the court rejects that argument, the district court also clearly aired in discounting Soriano's consent, despite the fact that he knew incriminating evidence would be discovered. The district court discount discounted it, saying that it's not clear that Soriano knew it would be discovered. But that conflicts both with this court's prior holdings and with the record. In this case, this court has said that when a person gives a general consent in Mendoza Gonzalez that they expect all of the containers in their car to be searched. Here, Soriano was asked, May I search the car? He responded, Search it. That's a general consent. But further from the record, Trooper Rodriguez made clear throughout their interaction that she was suspicious from the beginning, from the first moment she saw it of the duffel bag and that she did not trust Soriano. She told accused him of lying at least three times, um, and asked him to if there is any incriminating evidence in the car at least three times. The district court's discounting of it, saying that it's possible that the duffel bag would not be searched, is belied by the fact that it was searched within five minutes of the search beginning. Soriano's consent, despite the fact that he knew that incriminating evidence would be discovered because of its easy to locate because of its easy location, clearly shows that there was not a voluntary consent in this case. But we see lots of cases, uh, with stops and search where, you know, the officer asked for consent. And from my perspective, viewing the case later, I'm wondering why the person said, Okay, do it. Because as soon as the officer looks, you know, there they find all kinds of stuff. And so the can search it on the theory that, oh, if this person said, Yeah, it must not be anything to look for. Therefore, I won't look. Well, most cases, the defendants are wrong because they go ahead and search. So my point is, we have a lot of cases, roadside and so forth, where officer asked me, I consent person says yes, officers begin to search and, you know, kind of there it is. And I don't mean tearing the back seat out. So, you know, what is different or said different? What's your best case that in this scenario, the fact that he said yes, search it isn't different from what I just illustrated, thinking that that's gonna dispel or lessen the officer's verb to want to search because I have said yes, as opposed to Oh, no, don't search. Your Honor, the best case is Robertson from the Fifth Circuit in 2017, where this court approved a district court's finding of exactly that this factor cuts in the defendant's favor, but referring to the other cases that the court is referring to in this court's cases dealing with when the court discounts that six factor, it tends to give a reason, such as in Tompkins and gave our Miranda, where the court found there were other reasons that the defendant believed he was in trouble and therefore consented, hoping for that Soriano was hoping for leniency. I see that my time's expired. All right. Well, thank you. You have preserved your rebuttal time. Mr. Stelmack for the government. May it please the court. First, I would like to apologize for making that inaccurate factual statement about the location of the other officer. I'm very sorry about that. Appellant's main argument is that there was coercive police conduct in the statements of Trooper Rodriguez. And our first point is that this case didn't involve any initial or other constitutional violations. Perales explained that a court's concern about coercion is often preceded by an independent constitutional violation, and there is none here. Um, the general atmosphere here is not coercive. It's only one option of one inaudible statement, and that occurs when they're looking at all the gas containers in the in the trunk. And actually, they're all laughing about how much how many gas containers on the trunk. He's not restrained. He's not placed in the police car. There are no threats. It's a It's a conversation by the side of the road and as to confronting them with inconsistent statements, his statements were inconsistent. He first says, I'm gonna visit my brother, and then he says, I'm gonna visit my mother and then coming back the next day. And then she sees a large suitcase and says, Well, I thought you're coming back the next day. And he says, Well, I don't know if my mother's gonna be home. So he's going on a 300 mile trip to see his mother doesn't know whether he's gonna be home. And that kind of story invites some kind of is a means of investigation. His main complaint is that after the trooper said to him that her questions have been clear, she falsely claimed to have consulted her partner and that this is the kind of misrepresentation that was coercive. And her exact statement was after recounting, we've been speaking in Spanish. It was, quote, My thinking in the thinking of my partner is the same. Okay? She says, quote, My questions have been clear. I asked him if I was being misunderstood or am I being confusing with you that you can't understand my questions? He told me No, I understand everything you told him. She does not say that her partner believed or agreed that he was up to something illegal. She's making the reference to her partner and confronting Soriana with a statement. When's the last time you've been arrested? I was a year and a half ago, and then she found out on the computer check. It had only been two months ago. This isn't the kind of trickery that's been found to be unwarranted in other cases. In Walker, the officer asked a person other than the person who had rented the car for permission to search and knowing that he was unauthorized to consent, and the court found that practice weighed against consent. Cavett actually Cavett doesn't decide the issue of consent. It talks about it, but it doesn't resolve it. That's a case of an initial constitutional violation of lack of reasonable suspicion and that he may and that the officer may have involved in misrepresentation as the purpose of relocating. That was where they said we're going to relocate to the truck stop to give you warnings. But really, their purpose of relocating the truck stop was to continue questioning and Webster, which is kind of the case that started it. That's also an initial constitutional violation where the trick was we're going to go down to the station to have coffee, and the guy wanted to have coffee, but he was actually ordered to bring in a person's name was Royalston for custodial questioning. So that was a case of tricking him into an effective arrest. This doesn't involve any kind of trickery as to a material matter. What her partner thinks, Mr. Selma, what is the entirety of the misrepresentation or to use your friend's word, the deceit in this case that my partners that my partner believes the questions I've been telling you have been clear. That's the entirety of it. That's that. That is what? That's the purpose of of she's saying. My partner thinks that my questions have been clear because he's he he's asked when when have you been stopped? What have you been cited first? And then when have you been stopped? And then she says, When have you ever been arrested? And he doesn't. He doesn't come clean with that. And the purpose of my questions have been was that after she checked the computer and found that he'd been arrested to only two months earlier than it set up that it set up that you haven't been telling me the truth. I just want to make sure I fully understood and we're comparing cases and different kinds of trickery or other failure to be completely candid. What exactly is the complete misstatement here? And I think you've told me. So that's all I was seeking from you. And my point would be, um, that it did not induce consent. Um, actually, the consent occurred a minute and 38 seconds after that, when they discussed the difference between an arrest and a non arrest. And then she asked, um, whether there's anything in the car. And he says, No, there's nothing in the car. And then she asked if it's all right to to to search the car. Um, retaining his identification documents was not coercive. The traffic stop and the reasonable suspicion inquiry weren't completed when the trooper sought consent, where a stop is lawfully prolonged. It's not coercive to retain the documents. And then also, this case involves an actual request to search Surrey on his vehicle. It's nothing like Zavala, which is relied on by appellant and Zavala. Zavala was placed in the police car. And then the trooper stated to the dispatcher in front of Zavala, we're going to take him to the to the checkpoint. And then his request for consent was I'm going to take you to the checkpoint. Okay. And here in this, in our case, it's do you give me permission to check the car? And he says, check it. And then later, when she says she says again about checking the car, he again says, check it. It's like a second chance for him to think about it. His consent is is affirmative, and it's and it's unambiguous. Um, I the court's statement about whether evidence would be found. That is, as Judge Stewart was saying, um, that's that's, um, an amorphous area. Um, he had already pulled the clothes or opened the suitcase so that they could look at it. And, oh, it's just clothes. And then they went back to look at the trunk, and the troopers actual belief was that there was drugs in the gas tank because there's so many gallon containers of gas, and you usually run out of gas when when you when you have drugs in the gas tank. So I don't think that the district court's analysis was clearly erroneous because his main interest or their main interest was in the gas tank, and he could have believed there'd be no further scrutiny for the bag of clothes. The court's finding here that there was no coercion and that consent was voluntary here was not clearly running. Mhm. All right. Questions. Any from the panel? Oh, all right. Thank you. We have a government's position. Thank you, Mr Stelmack. We're back to you, Mr O'Neill for rebuttal. Your Honor, I'd like to address briefly outweighs question about the extent of the trickery in the cross examination during I'm sorry. I'm getting a notification that I'm muted. Can I be heard? Yeah, we hear you in the cross examination of Trooper Rodriguez. I asked her. You're telling him I had this conversation with my partner. I said, Am I being clear? Am I not speaking Spanish? Well, and he said, No, I understood everything you said. That's what you told him happened, right? Answer. Yes. Question. That's not what happened, though. Right answer. He was seeing the same things I was seeing. Another question. So this what you're telling him now I've checked this over with my partner. He thinks I'm being clear. He we both think there's something strange going on here. That's not true, right? No, it was clear to Trooper Rodriguez in her testimony, and it's true. Clear in the video from her lack of pauses between discussing the clarity and reasonable person in Soriano's position would feel that the deceit extended to the fact that they both thought that he was lying. And I think the record bears that out clearly. Mr Stelmach argues that the primary interest of the officers was in the gas tank, but that was never expressed to Soriano. And it's also not borne out in the video. They never searched the gas tank in the video. But just to conclude the government's position and the lead to the idea that no single factor is dispositive here. Soriano was of average. We had an eighth grade education from Mexico, but he could talk to the officer. He didn't actively obstruct their attempt to search his car. The government's position is essentially as long as a person, a motorist can have a have a conversation with an officer and doesn't do something so incooperative to stop them from searching the car. They can't be on to consent unless there are there's physical force or verbal threats involved. That is not consistent with this court's cases on coercion. That's not consistent with this court's cases on voluntariness. All right, help me out. Okay. You know, this matter is fact driven if it's anything. Uh, my ears alert when we got the lawyer on appeal that was down below handling this. So you had Officer Rodriguez in the crosshairs on cross examination, pun intended. So tell me when I read the transcript, uh, more closely. Tell me where the jugular points are that you extracted on cross examination that support the arguments you've otherwise made legally demonstrating a deceit be coercive in this fact driven pattern. You follow him asking you? Yes, exactly. Your honor. And in preparing for this, I was kicking myself because I thought I hadn't elicited those in the motion to suppress hearing, but then re read the transcript and was happy to find them on record 302 to 306 specifically 302 303 and 306 are the pages I'm relying on in my presentation to the court today where she and those are the parts where she essentially says through her statements that she meant the misrepresentation to extend to, uh, to the fact that Soriano had lied, uh, and that she, um, understood that her interaction and her questioning of Soriano as a ramp up to her question to ask prior to her asking for consent to search. All right. So my follow up to that is your argument that in addition to what you've argued about the cases you think of most applicable that that testimony that you extracted on cross examination is sort of the silver bullet that's gonna differentiate this case from just being a fact bound credibility born determination in a motion to suppress. Is that is that your silver bullet that leverages your argument to a reversal? Yes, your honor. And I think it's not just that it's a credibility determination. I'm not arguing that Trooper Rodriguez was at any point not credible. But the one thing I'll add to the court's consideration in addition to that is the end of the transcript of her body camera, which is 399 to 400 in the record where Trooper Rodriguez is asked sorry, and I think this really buttresses the sixth factor. She asked Soriano, why were you so mysterious before? And he answers the necessity. He clearly understood it necessary to stop her from finding the incriminating evidence. If he had, if he knew he could have consent or felt able to do so to deny consent, he would have. That shows that it wasn't voluntary. All right. I just want to make sure I understand the argument because, as you well know, you were there. The court, you know, balances the six factors, doesn't find all the six factors in favor of the government, but in fact, find some you cross examined and so forth. And so that's why I want to be clear. If you're saying record 302 to 306 that when we look, we're gonna find that's where the the leveraging factor that cuts through to demonstrate error below. But I think that's what you're saying. If that's the case, then, you know, we've got your argument. Thank you, Your Honor. All right. All right. Thank you, Mr O'Neill and Mr Stelmack for your briefing and argument. We will examine it closely and decided as soon as we can. All right. You may be excused. Thank you.